UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
UNITED STATES OF AMERICA          :

    - v -                                          :     CR 20-203 (BMC)

COLINFORD MATTIS                        :
AND UROOJ RAHMAN,
                                                      :
               Defendants.
------------------------------------------------------X

# DEFENDANT UROOJ RAHMAN'S MOTION TO DISMISS COUNTS ONE THROUGH FIVE OF THE INDICTMENT

Paul Shechtman
Rita K. Maxwell
Rebecca J. Foxwell
Bracewell LLP
1251 Avenue of the Americas, 49th Floor
New York, NY 10020
(212) 508-6107
paul.shechtman@bracewell.com

Peter Baldwin
Andrew Dettmer
Faegre Drinker Biddle & Reath LLP
1177 Avenue of the Americas, 41st Floor
New York, NY 10036
(212)-248-3147
peter.baldwin@faegredrinker.com

*Counsel for Urooj Rahman*

September 17, 2021

TABLE OF CONTENTS

        PAGE

TABLE OF AUTHORITIES ................................................................................................ ii

BACKGROUND ...............................................................................................................1

ARGUMENT .....................................................................................................................2

POINT ONE:    COUNT ONE SHOULD BE DISMISSED BECAUSE
THE AUXILIARY POLICE VEHICLE WAS NOT
PURCHASED OR POSSESSED USING FEDERAL FUNDS .........................2

POINT TWO:    COUNT TWO SHOULD BE DISMISSED BECAUSE THE
AUXILIARY POLICE VEHICLE WAS NOT USED IN AN
ACTIVITY AFFECTING INTERSTATE COMMERCE ..................................5

POINT THREE:    COUNT THREE MUST BE DISMISSED BECAUSE
THE TERM "ANY FELONY" IN SECTION 844(h)(1)
DOES NOT INCLUDE ARSON .......................................................................10

POINT FOUR:    COUNT FOUR SHOULD BE DISMISSED FOR
MUCH THE SAME REASON AS COUNT TWO ...........................................12

POINT FIVE:    COUNT FIVE MUST BE DISMISSED BECAUSE
§844(f)(1) IS NOT A "CRIME OF VIOLENCE" ............................................12

CONCLUSION ..................................................................................................................15

TABLE OF AUTHORITIES

PAGE

CASES

Belflower v. United States, 129 F.3d 1459 (11th Cir. 1997) ..................................................8

Borden v. United States, 141 S.Ct. 1817 (2021).................................................................13, 14, 15

Jones v. United States, 529 U.S. 848 (2000) ........................................................................3, 6, 9

McDonnell v. United States, 136 S.Ct. 2355 (2016) ..............................................................5

Miqui v. City of New York, 2003 WL 22937690 (E.D.N.Y.) .................................................9

Rudolph v. United States, 2021 WL 3212804 (N.D. Ala.).....................................................14, 15

U.S. v. Lamont, 330 F.3d 1249 (9th Cir. 2003) ......................................................................6, 7

United States v. Aguilar, 515 U.S. 593 (1995) ........................................................................5

United States v. Apodaca, 522 F.2d 568 (10th Cir. 1975)......................................................5

United States v. Brown, 384 F. Supp. 1151 (E.D. Mich. 1974) .............................................3

United States v. Corona, 108 F.3d 565 (5th Cir. 1997) .........................................................11

United States v. Davis, 139 S.Ct. 2319 (2019) .......................................................................13

United States v. Elliott, 684 Fed. Appx 685 (10th Cir. 2017) ................................................5

United States v. Gaydos, 108 F.3d 505 (3rd Cir. 1997).........................................................8, 9

United States v. Hersom, 588 F.3d 60 (1st Cir. 2009)............................................................2, 3, 5

United States v. Iodice, 525 F.3d 179 (2d Cir. 2008) .............................................................9

United States v. Johnson, 227 F. Supp. 3d 1078 (N.D. Cal. 2016)........................................14

United States v. Konopka, 409 F.3d 837 (7th Cir. 2005) ......................................................10

United States v. McGuire, 178 F.3d 203 (3d Cir. 1999).........................................................7

United States v. Mennuti, 639 F.2d 107 (2d Cir. 1981)..........................................................8, 10

United States v. Monholland, 607 F.2d 1311 (10th Cir. 1979) ........................................................7

United States v. Montgomery, 815 F. Supp. 7 (D.D.C. 1993)............................................... 6, 9-10

United States v. Nikolla, 950 F.3d 51 (2d Cir. 2020) ....................................................................13

United States v. Patel, 370 F.3d 108 (1st Cir. 2004) .....................................................................11

United States v. Roof, 2021 WL 3746805 (4th Cir.) .....................................................................14

United States v. Ryan, 227 F.3d 1058 (8th Cir. 2000).....................................................................9

United States v. Sicurella, 834 F. Supp. 621 (W.D.N.Y. 1993) ....................................................11

United States v. Sweatt, 2021 WL 3022695 (D. Md.)....................................................................15

United States v. Tsarnaev, 968 F.3d 24 (1st Cir. 2020).................................................................14

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------X
UNITED STATES OF AMERICA          :

      - v -                              :          CR 20-203 (BMC)

COLINFORD MATTIS                          :
AND UROOJ RAHMAN,
                                                        :
                    Defendants.
-------------------------------------------------X

This memorandum is respectfully submitted in support of Urooj Rahman's motion to dismiss Counts One through Five of the Indictment as legally defective.

### BACKGROUND

On May 30, 2020, around 1:00 a.m., Urooj Rahman and Colinford Mattis were arrested for throwing a Molotov cocktail into an unoccupied auxiliary police vehicle parked down the block from the 88th Police Precinct in Brooklyn. The vehicle was out of commission, having been badly damaged earlier that night in the civil protest that engulfed Brooklyn following George Floyd's death at the hands of Minneapolis police. The device caused only minor damage to the console of the vehicle, and no one was injured.

Rahman and Mattis were initially arrested by New York City police officers on state charges but were transferred to federal custody later that morning. What followed was the seven count federal indictment at issue here. Five of the seven counts carry mandatory minimum prison terms, the greatest of which (Count Five) is 30 years. This motion challenges the validity of those five counts. As we hope to show, the government set out to find those charges that carry the most severe punishment, but, in doing so, selected charges that do not pass muster.

-1-

ARGUMENT

POINT ONE

COUNT ONE SHOULD BE DISMISSED BECAUSE THE AUXILIARY POLICE VEHICLE WAS NOT PURCHASED OR POSSESSED USING FEDERAL FUNDS

Count One charges Ms. Rahman, under 18 U.S.C. §844(f)(1), with "maliciously damag[ing] . . . by means of fire and an explosive, a vehicle . . . in whole and in part owned . . . by . . . an . . . organization receiving Federal financial assistance, to wit: the New York City Police Department."[1]  As discussed below, section 844(f), properly construed, is "limited to property owned or possessed using federal financial assistance," and therefore does not reach the auxiliary police vehicle at issue in this case.  United States v. Hersom, 588 F.3d 60, 67 (1st Cir. 2009).

Our motion as to Count One relies on the First Circuit's decision in Hersom, in which the defendant was charged with setting fire to buildings owned by a private entity, which had been renovated using funds obtained from HUD.  There, the Court noted that §844(f) was enacted in 1970 pursuant to Congress's power under the Property Clause of the Constitution.  Id. at 62, citing H.R. Rep. No. 91-1549 (1970).  That clause provides that "Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States."  U.S. Const., art. IV, §3, cl. 2.  Thus, the question in Hersom, as here, was whether applying section 844(f) to any property of an organization "receiving Federal financial assistance" was a permissible exercise of Congress's power under that Clause.

The Court answered the question this way:

> [A]pplying section 844(f) to all property of any organization "receiving Federal financial assistance" would give the statute a sweeping scope. In the present economy, a wide variety of organizations, both private and non-profit, receive some form of federal financial assistance to acquire, renovate, or lease specific property. Applying the statute to cover all property owned by such entities would transform

---

[1]  Section 844(f)(1) carries a mandatory minimum sentence of five years' imprisonment.

a broad swathe of "traditionally local criminal conduct" into a "matter for federal enforcement." <u>Jones v. United States</u>, 529 U.S. 848, 858 (2000). The interpretive canon against construing statutes to have the effect of significantly altering the federal-state balance in the prosecution of crime would thus appear to apply here with full force . . . . <u>Thus, in the case of organizations receiving federal financial assistance related to specific property, we construe section 844(f) as limited in general to arson of that particular property</u>.

588 F.3d at 67 (emphasis added).

The Court advanced these points to support its conclusion. First, there is no legislative history suggesting that Congress intended section 844(f) to reach all property owned, leased or possessed by an organization receiving federal financial assistance, and it is hard to imagine the "federal interest that would be served by such as expansive interpretation." <u>Id.</u> at 66. Second, the legislative history suggests that Congress intended the scope of the statute "to be co-extensive with its authority under the Property Clause, and was primarily concerned with the authority of the United States 'to protect its own property.'" <u>Id.</u> Third, no Property Clause case supports an interpretation that would apply §844(f) so broadly as to encompass any property of any organization receiving Federal financial assistance. <u>Id.</u>; <u>see also</u> <u>United States v. Brown</u>, 384 F. Supp. 1151, 1157 (E.D. Mich. 1974)(the cases "make it clear that for the Property Clause to be properly invoked as a basis for congressional enactment, some actual and substantial property interest of the federal government must be involved"). And fourth, §844(f) must be "construe[d] . . . to avoid constitutional questions that would be presented by a broad construction" of the provision. <u>Hersom</u>, 588 F.3d at 67, <u>citing</u> <u>Jones</u>, 529 U.S. at 857 ("where a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the

other of which such questions are avoided, our duty is to adopt the latter"). All of these points support a narrowing interpretation of the provision.[2]

Applying section 844(f) to any property of any organization "receiving Federal financial assistance" would give the statute a breath-taking scope. Section 844(f) does not require any minimum amount of federal assistance to trigger federal jurisdiction. Compare 18 U.S.C. §666 ($10,000 in any one year period). Moreover, the organizations receiving federal assistance number in the millions. To take only one example, more than 11 million businesses received loans under the Paycheck Protection Program ("PPP") established during the pandemic to assist small businesses retain employees. Among those businesses located in Brooklyn are the Park Plaza Restaurant, the Brooklyn Youth Chorus Academy, St. Francis Monastery, the Vinegar Hill Veterinary Group, and Junior's Restaurant. If §844(f) is not narrowed, an arson of any property of any of those organizations would be a §844(f) crime.

Some hypotheticals underscore the point. Could a patient who sets fire to his bed sheets at a hospital be charged with a §844(f) offense if the hospital receives federal funding to purchase laboratory equipment? Could a student who sets fire to a banner at a rival university be charged with a §844(f) offense if the university receives federal funding for scholarships? Could a patron who sets fire to a Christmas tree in the lobby of a museum be charged with a §844(f) offense if the museum receives a federal grant to catalogue its collections? Surely, the answer to each of these questions is "no."

Nor can one rely upon prosecutorial discretion to achieve sensible results. As the Supreme Court has said, we "cannot construe a criminal statute on the assumption that the

---

[2]  The First Circuit upheld Hersom's conviction, finding that "the property in [his] case was renovated using . . . a $50,000 loan from the City of Lewiston through the HUD block grant" so that federal jurisdiction was proper. 588 F.3d at 68.

Government will 'use it responsibly.'" McDonnell v. United States, 136 S.Ct. 2355, 2372-73 (2016). Restraint in interpretation, not wishful thinking, is called for in such circumstances. See United States v. Aguilar, 515 U.S. 593, 600 (1995)("[w]e have traditionally exercised restraint in assessing the reach of a federal criminal statute").[3]

In sum, unless Section 844(f) is construed to require some nexus between the property that is the subject of the arson and the federal financial assistance, it sweeps beyond Congress' power under the Property Clause. Here, there is no conceivable nexus between the auxiliary police vehicle at issue and any federal financial assistance that the New York City Police Department receives. There is no suggestion that federal funds were used to purchase the vehicle or repair it; it is not "federally-funded property." For that reason, Count One cannot survive scrutiny.

POINT TWO

COUNT TWO SHOULD BE DISMISSED BECAUSE THE AUXILIARY POLICE VEHICLE WAS NOT USED IN AN ACTIVITY AFFECTING INTERSTATE COMMERCE

Count Two charges Ms. Rahman, under 18 U.S.C. §844(i), with "maliciously damag[ing] . . . by means of fire and an explosive, a vehicle . . . used in interstate . . . commerce and in activity affecting interstate . . . commerce."[4] As discussed below, the count should be

---

[3] The Tenth Circuit has reached a conclusion opposite to that of the First Circuit. See United States v. Apodaca, 522 F.2d 568, 572 (10th Cir. 1975)("[t]he clear and unambiguous language of the statute provides that it applies to any property owned, possessed, used by or leased to any organization receiving federal financial assistance"); United States v. Elliott, 684 Fed. Appx 685, 696 (10th Cir. 2017)(the arson statute applies "even when federal funds are not being directed to the [property] that was [set on fire]"). But as the First Circuit has observed, "it does not appear that the legislative history of [§844(f)] or concerns about the constitutional power of Congress" were considered by the Tenth Circuit in reaching its decision. Hersom, 588 F.3d at 67 n.3.

[4] Count Two carries a mandatory minimum sentence of five years' imprisonment.

dismissed because the vehicle involved in this case -- a badly damaged auxiliary police vehicle -- was not used in an activity affecting interstate commerce.

At the outset, it bears emphasis that arson "is a paradigmatic common-law state crime." Jones v. United States, 529 U.S. 848, 858 (2000). That fact militates against a broad reading of § 844(i)'s interstate commerce element. As the Ninth Circuit has observed, "[i]n all cases in which Congress adopts criminal laws in an area traditionally occupied by the states, [a court] must examine such purported interstate commerce connections with a fair degree of skepticism, to ensure that the federal government prosecutes only those individuals over whom it has the proper authority." U.S. v. Lamont, 330 F.3d 1249, 1256 (9th Cir. 2003); see also United States v. Montgomery, 815 F. Supp. 7, 11 (D.D.C. 1993)("[i]n [a] criminal case, it is appropriate to construe both the Commerce Clause and Section 844(i) with restraint and according to the principle of lenity").

The leading case interpreting § 844(i)'s interstate commerce element is the Supreme Court's decision in Jones. There, the Court held that the arson of an owner-occupied residence not used for commercial purposes did not satisfy §844(i)'s jurisdictional requirement. The Court observed that, when unqualified, the phrase "affecting interstate commerce" signals Congress's intent to invoke its full authority under the Commerce Clause, but in §844(i), the phrase is qualified by the term "used," which requires proof of "active employment." Jones, 529 U.S. at 854-55. Thus, in determining whether property satisfies §844(i)'s interstate commerce requirement, "[t]he proper inquiry . . . is into the function of the [property] itself, and then a determination of whether that function affects interstate commerce." Id. at 854.

More specifically, the Court wrote this:

> The Government correctly observes that § 844(i) excludes no particular type of
> building (it covers "any building"); the provision does, however, require that the

> building be "used" in an activity affecting commerce. That qualification is most sensibly read to mean active employment for commercial purposes, and not merely a passive, passing, or past connection to commerce. Although "variously defined," the word "use," in legislation as in conversation, ordinarily signifies "active employment."

Id. at 855. On that basis, the Court rejected the government's argument that the interstate commerce element was met because (i) the homeowner used the dwelling as collateral to obtain and secure a mortgage from an out-of-state lender; (ii) the homeowner used the residence to obtain a casualty insurance policy from an out-of-state insurer; and (iii) the dwelling received natural gas from an out-of-state source. Id. None of this satisfied the jurisdictional element. The home's only "active employment" was for "the everyday living of" the family that occupied it, which did not constitute an activity in interstate commerce. Id. at 856.

Under Jones then, the analysis must focus on the property -- here a badly damaged auxiliary police vehicle -- that was the target of the arson. What was the vehicle's function? Was it used in an activity affecting interstate commerce? The fact that the vehicle (or parts for it) were manufactured out-of-state is insufficient to satisfy the interstate element. See United States v. McGuire, 178 F.3d 203, 210 (3d Cir. 1999)("consumption of gasoline refined from foreign oil" and "wear and tear on vehicle manufactured in another state or country" were insufficient to confer federal jurisdiction). As the Ninth Circuit has observed, "[i]n our modern world, no person or institution but the most hardily self-sufficient is free from possessing some amount of goods that have, at one point in time, traveled interstate." Lamont, 330 F.3d at 1256.

Similarly, the fact that the NYPD (or, more generally, policing) affects interstate commerce is not sufficient; the question is whether this particular vehicle had that effect. See United States v. Monholland, 607 F.2d 1311, 1314-16 (10th Cir. 1979)(pickup truck used to drive state judge intrastate to courthouse was not used in interstate commerce even if judge's work affected interstate commerce); Lamont, 330 F.3d at 1253-54 (court must focus on the use of the

church building that was fire-bombed, not on the use of the church as an institution). Simply stated, Congress "chose to require that the damaged or destroyed property must itself have been used in commerce or in an activity affecting commerce." United States v. Mennuti, 639 F.2d 107, 110 (2d Cir. 1981).[5]

We have found only one case involving the arson of a police vehicle, Belflower v. United States, 129 F.3d 1459 (11th Cir. 1997). There, the police vehicle was owned by the local Sheriff's Department and operated by Deputy Sheriff Thrower. In upholding the defendant's conviction, the court wrote this:

> Thrower has patrolled traffic on Interstate 16 and other roads within Bleckley County. Of the people to whom he issues traffic citations, Thrower estimated that twenty to thirty percent are from out of state. Thrower has also participated in interstate narcotics investigations and has made several drug arrests on the interstate. When Thrower stops a person or vehicle on the street, he usually runs the identity of the person or vehicle through computers to determine if such individual or vehicle is wanted by state or federal authorities. In the course of his duties, Thrower has arrested individuals who lived outside Georgia, has recovered stolen property outside of the state, testified as a witness in out of state cases, and has attended law enforcement training sessions outside Georgia.

Id. at 1462. These facts demonstrated that Thrower's vehicle was used in activities affecting interstate commerce.

What was true of Thrower's patrol car is almost certainly not true of the auxiliary police vehicle here. See United States v. Gaydos, 108 F.3d 505, 508 (3rd Cir. 1997)(emphasizing the need for a case-by-case inquiry to "ensur[e] . . . that the property in question must be used" in interstate commerce). In New York City, "[a]lthough auxiliary officers perform foot patrol, traffic and crowd control, cover special events and conduct other nonhazardous jobs that a regular police

---

[5] If a vehicle were found to be used in an activity affecting interstate commerce simply because it belonged to a police department, then any arson directed at any police property would be a federal crime. Setting fire to a police barrier, a police surveillance camera affixed to a street corner pole, or even a police officer's hat would violate §844(i).

officer would perform in uniform, their primary function is to observe and report ongoing criminal activity." Miqui v. City of New York, 2003 WL 22937690, at *3 (E.D.N.Y.). They are essentially a civilian patrol. Id. They are unarmed volunteers (many of them "buffs"), who do not possess any arrest powers beyond those of private citizens. An auxiliary police vehicle rarely leaves the precinct to which it is assigned and is not driven interstate. Its use is strictly limited. Accordingly, it would stretch § 844(i)'s interstate commerce element beyond its moorings if an arson of an auxiliary police vehicle constituted a federal crime.

Moreover, as noted above, Jones looks to whether the targeted property is currently used in an activity affecting interstate commerce; a "past connection" to commerce is not enough. 529 U.S. at 855. Thus, a building that was vacant and uninhabitable at the time it was set on fire was not in interstate use, even if it had previously been a rental property. Gaydos, 108 F.3d at 511; see also United States v. Ryan, 227 F.3d 1058, 1063-64 (8th Cir. 2000)(closed fitness center was not currently used in interstate commerce); but see United States v. Iodice, 525 F.3d 179, 184 (2d Cir. 2008)(§844(i) applies to temporarily vacant building where there is "definite plan[] to return [it] to the stream of commerce"). Here, the auxiliary vehicle was already badly damaged before the Molotov cocktail was tossed into it. That fact lends further support to the conclusion that the vehicle was not used in an activity affecting interstate commerce at the relevant time, and therefore that § 844(i) does not apply.

In sum, Count Two seeks to convert a "paradigmatic common-law state crime" into a federal crime by claiming that the auxiliary police vehicle targeted here was used in an activity affecting interstate commerce. Driving around a local precinct to observe conditions does not satisfy that jurisdictional requirement. That is especially so when the vehicle cannot be driven. If Count Two is construed "with restraint and according to the principle of lenity," Montgomery, 815

F. Supp. at 11, it does not plead a federal crime and should be dismissed. See Mennuti, 607 F.2d at 112 (Congress did not "intend[] that everybody and everything should be included").

POINT THREE

COUNT THREE MUST BE DISMISSED BECAUSE THE TERM "ANY FELONY"
IN SECTION 844(h)(1) DOES NOT INCLUDE ARSON

Count Three charges Ms. Rahman, under 18 U.S.C. §844(h)(1), with using an explosive to commit one or more felonies "to wit: the crimes charged in Counts One and Two, which felonies may be prosecuted in a court of the United States."[6] As discussed below, however, §844(h)(1) does not apply if the alleged predicate felony is arson.

Judge Posner's decision in United States v. Konopka, 409 F.3d 837 (7th Cir. 2005), is directly on point. There, the defendant was charged, under §844(i), with setting fire to a building in which sauerkraut was manufactured and, under §844(h)(1), with using fire to commit a federal felony. The predicate federal felony for the §844(h)(1) count was the arson of the sauerkraut factory. As Judge Posner saw it, the question was this: "why would Congress want the use of fire to enhance the punishment for using fire?" Id. at 839 ("[e]ven the assistant U.S. attorney who argued the appeal could not think of any reason for such a strange result"). The answer to that question was that Congress could not possibly have had such an intent:

> Section 844(h) reflects the view of Congress that fire (or the use of explosives, which is also covered by the section), is especially dangerous because it can so easily get out of hand and cause widespread destruction and that therefore felonies effected by means of fire should be punished more severely than felonies effected by other means. But the heavy federal penalty for arson, see 18 U.S.C. §844(i) (5 to 20 years even if no one is injured), is based on precisely the same idea -- that fire is abnormally dangerous. The policy of section 844(h) is . . . embodied . . . in the arson statute, so that the government's position amounts to arguing that in

---

[6] Section 844(h)(1) reads as follows: "Whoever uses fire or an explosive to commit any felony which may be prosecuted in a court of the United States" is guilty of an enhanced offense. The provision authorizes an enhanced punishment of 10 years "in addition to the punishment provided for [the underlying felony]."

enacting that section Congress intended to increase the sentence for arson by 10 years.

Id.

For that reason, Judge Posner concluded that the term "'any felony' in section 844(h) means any felony other than arson and conspiracy to commit arson." Id. Other cases reach the same result. See United States v. Patel, 370 F.3d 108, 115 n.5 (1st Cir. 2004)(Congress meant to punish using fire to commit a felony and the predicate felony cumulatively, except that "[a]rson cannot be charged as the predicate felony because arson and 'using fire to commit arson' is a redundancy for which Congress did not intend to authorize cumulative punishments"); United States v. Corona, 108 F.3d 565, 572 (5th Cir. 1997)("[i]f the predicate offense in the use-of-fire count had been the arson charged in count two [a §844(i) offense], those two counts would differ only in name -- both would punish the defendants for burning buildings with an effect on interstate commerce," which would be impermissible).

The same point can be made somewhat differently. If the predicate felony for an §844(h)(1) offense could be federal arson -- an §844(i) offense or an §844(f) offense -- then every §844(i) or §844(f) offense could also be an §844(h)(1) offense, and the effective punishment for federal arson would be a mandatory minimum sentence of 15 years (5 plus 10). In enacting §844(h), Congress sought to enhance the punishment for those who use fire or an explosive to commit other federal felonies. It did not intend to increase the punishment for arson. See United States v. Sicurella, 834 F. Supp. 621, 624 (W.D.N.Y. 1993)("subsection (h) is designed to add an additional punishment when explosives or fire are used to commit federal felonies <u>other than the crimes of destruction of property by explosives or fire</u>")(emphasis in original).

In sum, because the crimes charged in Counts One and Two (§844(f) and (i)) cannot be predicates for the crime charged in Count Three (§844(h)(1)), Count Three must be dismissed.

-11-

## POINT FOUR

### COUNT FOUR SHOULD BE DISMISSED FOR MUCH THE SAME REASON AS COUNT TWO

Count Four charges Ms. Rahman, under 18 U.S.C. §844(n), with conspiring with Colinford Mattis to "maliciously damage . . . by means of fire and an explosive," the same auxiliary police vehicle as in Count Two.[7] Here, too, the count alleges as its jurisdictional element that the vehicle was "used in interstate commerce . . . and in an activity affecting interstate . . . commerce." If we are correct that Count Two must be dismissed because the jurisdictional element is wanting, then Count Four should go with it. The auxiliary police vehicle involved here performed neighborhood patrols and was not used in an activity affecting interstate commerce. Charging what occurred as a conspiracy (§844 (n)) as opposed to a substantive offense (§844(i)) should not alter the analysis or result.

## POINT FIVE

### COUNT FIVE MUST BE DISMISSED BECAUSE §844(f)(1) IS NOT A "CRIME OF VIOLENCE"

Count Five charges Ms. Rahman, under 18 U.S.C. §924(c)(1)(B)(ii), with using a destructive device "during and in relation to a crime of violence, to wit the crime charged in Count One" of the Indictment.[8] Count One, the alleged predicate "crime of violence," charges her, under 18 U.S.C. §844(f)(1), with "maliciously damag[ing] . . . by means of fire and an explosive, a vehicle . . . in whole and in part owned . . . by . . . an . . . organization receiving Federal financial assistance, to wit: the New York City Police Department." In Point One, supra, we argued that Count One is defective because the auxiliary police vehicle at issue was not purchased or possessed

---

[7]  Count Four carries a mandatory minimum sentence of five years' imprisonment.

[8]  Count Five carries a mandatory minimum sentence of 30 years' imprisonment.

using federal funds. If that argument is sound, then Count Five must be dismissed. A defective predicate is no predicate at all. But even if we are mistaken in Point One, Count Five must be dismissed for an entirely separate reason.

The question here is whether §844(f)(1) is a "crime of violence" as that phrase is defined in §924(c)(3), and therefore can serve as a predicate for a §924(c) offense. Section 924(c)(3) reads as follows:

> (3) For purposes of this subsection the term "crime of violence" means an offense that is a felony and --
>
> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

The second clause (§924(c)(3)(B)) -- the "residual clause" -- has been struck down as unconstitutionally vague. See United States v. Davis, 139 S.Ct. 2319 (2019). That leaves only the first clause (§924(c)(3)(A)) -- the "elements clause" -- for consideration. Only if section 844(f)(1) satisfies the elements clause can it constitute a "crime of violence."

As the Supreme Court has instructed, in determining whether an offense satisfies the elements clause, a court must use a "categorical approach" under which "the facts of a given case are irrelevant." Borden v. United States, 141 S.Ct. 1817, 1822 (2021). That approach requires a court "to consider whether the elements of the offense can be satisfied by conduct that would fall outside the definition of a crime of violence provided by §924(c)(3)(A)." United States v. Nikolla, 950 F.3d 51, 53 (2d Cir. 2020). If the alleged predicate offense criminalizes conduct not within the "crime of violence" definition, then it cannot qualify as a "crime of violence." See also Borden, 141 S.Ct. at 1832 (under the categorical approach, "[a]n offense does not qualify as a 'violent

felony' unless the least serious conduct it covers falls within the elements clause")(emphasis in original).

Last term in Borden, the Supreme Court held that a "crime of violence" includes "purposeful and knowing acts but excludes reckless conduct." Id. at 1826; see also id. at 1825 ("[t]he phrase 'against another' when modifying the 'use of force' [in the 'crime of violence' definition] demands that the perpetrator direct his action at, or target, another individual" or property); United States v. Roof, 2021 WL 3746805, at *58 (4th Cir.)(the statute "must also indicate a higher degree of [mens rea] than reckless, negligent, or merely accidental conduct in order to satisfy the elements clause").[9] That reduces the question here to this: does §844(f)(1) reach reckless conduct such that it is not a "crime of violence" and therefore cannot serve as a predicate for a §924(c) offense?

The answer to that question is straightforward. Section 844(f)(1) criminalizes "maliciously" damaging specified property by means of fire or explosive. "'Maliciously' . . . includes a mens rea of 'recklessness.'" Rudolph v. United States, 2021 WL 3212804, at *11 (N.D. Ala.); accord United States v. Tsarnaev, 968 F.3d 24, 101 (1st Cir. 2020)("'maliciously' . . . includes both intentional and reckless acts"); United States v. Johnson, 227 F. Supp. 3d 1078, 1088 (N.D. Cal. 2016)("the government does not dispute that the mens rea for arson under §844(f) can be reckless, and not just intentional, conduct"). Thus, "the least serious conduct" covered by

---

[9] Borden was a plurality opinion to which Justice Thomas, concurring in the judgment, provided the fifth vote. Notably, Justice Thomas agreed with the plurality that "[t]he elements clause does not encompass petitioner's conviction because the statute under which he was convicted could be violated through mere recklessness." 141 S.Ct. at 1835.

§844(f)(1) -- i.e., reckless arson -- falls outside the elements clause of §924(c)(3)(A), since that clause requires knowing or intentional conduct.[10]

In sum, §844(f)(1) criminalizes reckless as well as knowing or intentional conduct. And a statute that reaches reckless conduct cannot qualify as a "crime of violence" under §924(c)(3)(A) and serve as a predicate for a §924(c)(1)(B)(ii) offense.[11] Because Ms. Rahman did not use a destructive device "during and in relation to a crime of violence," Count Five must be dismissed.

### CONCLUSION

For these reasons, Counts One through Five of the Indictment should be dismissed.

Dated: New York, New York
September 17, 2021

                                                Respectfully submitted,

                                                /s/     Paul Shechtman
                                                Paul Shechtman
                                                Rita K. Maxwell
                                                Rebecca J. Foxwell
                                                Bracewell LLP
                                                1251 Avenue of the Americas, 49th Floor
                                                New York, NY 10020
                                                (212) 508-6107
                                                paul.shechtman@bracewell.com

---

[10] In Borden, the Court considered the elements clause of the Armed Career Criminal Act ("ACCA"), §924(e)(2)(B)(i), under which an offense qualifies as a violent felony if it "has as an element the use, attempted use, or threatened use of physical force against the person of another." A similar definition appears in 18 U.S.C. §16(a), but there the words "or property of another" are added after "person," bringing property crimes within the provision's ambit. Section 924(c)(3)(A) tracks the elements clause of §16(a). The three provisions are "materially identical"; each "sets out a mens rea requirement -- of purposeful or knowing conduct." Borden, 141 S.Ct. at 1827-28.

[11] Applying the same analysis as we have used here, two courts have held, post-Borden, that §844(i) cannot properly act as a predicate "crime of violence" under §924(c). United States v. Sweatt, 2021 WL 3022695, at *4 (D. Md.)("a §924(c) conviction based on an §844(i) offense cannot stand"); Rudolph at 2021 WL 3212804 *11 ("[b]ecause Rudolph's conviction for the predicate §844(i) arson offense . . . required proof that he acted 'maliciously' . . . it cannot be considered a 'crime of violence' under the elements clause of 18 U.S.C. §924(c)(3)(A)").

Peter Baldwin
Andrew Dettmer
Faegre Drinker Biddle & Reath LLP
1177 Avenue of the Americas, 41st Floor
New York, NY 10036
(212)-248-3147
peter.baldwin@faegredrinker.com

*Counsel for Urooj Rahman*