BRACEWELL




November 11, 2022

**VIA ECF**

Honorable Brian M. Cogan
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: United States v. Urooj Rahman,
Criminal Docket No. 20-203 (BMC)

Dear Judge Cogan:

This letter is written in response to the government's sentencing submission in this matter.

1. The government appears to take issue with Urooj's objection to the calculation of the base offense level for arson in the Presentence Report on the ground that Urooj stipulated to the Probation Department's Sentencing Guidelines calculation. Gov. Letter p. 5. In her plea agreement, Urooj agreed not to oppose the Guidelines calculation set forth in the agreement. Plea Agreement ¶ 2. There was no further agreement with respect to the Guidelines calculation. For the reasons set forth in our September 6 letter to Probation, the application of USSG § 2K1.4(a)(1) is inappropriate. This provision requires that a defendant knowingly create a substantial risk of death or serious bodily injury to other persons, and there is no evidence of that here.

BRACEWELL






The government seems to suggest that the act of setting fire to a car inherently involves a knowing creation of a substantial risk of death or serious bodily injury. No case that stands for that proposition, and, in fact, the case law demonstrates that far more serious conduct is required. See U.S. v. Georgia, 279 F.3d 384, 388 (6th Cir. 2022)("Nearly all of the cases where an appellate court has affirmed the application of [§ 2K1.4(a)(1)(A)] have involved one or both of the following two clearly exacerbating circumstances: (1) the risk of a large explosion, or (2) the presence of nearby residences.")(collecting cases).[1] Here, are there no facts to suggest that Urooj knew that this "specific fire for some reason pose[d] a substantial risk of death or serious bodily injury to fire fighters and emergency personnel who may [have] respond[ed]." U.S. v. Honeycutt, 8 F.3d 785, 788 (11th Cir. 1993).[2]

We recognize that given the stipulation in the plea agreement, this Guidelines objection has no impact on the ultimate recommended range, and we do not seek a hearing on this

---

[1] The government cites U.S. v. Honeycutt, 8 F.3d 785, 787-88 (11th Cir. 1993), but the facts of that case are markedly different than here. In Honeycutt, the defendant poured a five-gallon drum of accelerant around an automobile body shop and lit fires in four places with the intent to destroy his car that was inside the shop. Id. at 786, 788. The government offered evidence that "based on the proximity of hazardous materials and cars containing gasoline," the fire could have been extremely dangerous to the structure of the warehouse complex, creating a serious threat to fire fighters. Id. at 788. The defendant worked in the same complex and knew that flammable substances were housed there. On these facts, the court understandably found that he knowingly created a substantial risk of death or serious bodily injury to responders. Id.

[2] Notably, many cars were burned throughout the city and country during these and other protests, yet the government cites no instance of an interior fire spreading to a gas tank. (Indeed, federal regulations require car fuel systems to withstand intense crashes with minimal breaches to their fuel systems. See 49 C.F.R. § 571.301.) The government also suggests that the fire could have spread to the gasoline of "other vehicles nearby." Gov. Letter p. 6. Photos of the auxiliary sedan show that there were no "nearby" cars.

issue. We make this objection only to highlight that Urooj did not, and would not, knowingly create a substantial risk of death or serious bodily injury to anyone.

2. At pages 1-2 of its submission, the government discusses several text messages between Urooj, Mr. Mattis, and other friends. The government appears to argue that these messages show that Urooj "mobilized" and planned her actions in the 24 hours preceding her crime. Gov. Letter p. 8. We do not seek to excuse Urooj's statements in these texts. But we do challenge the notion that the text messages are evidence that her actions were planned. Nearly all the text messages referenced by the government were sent or received while Urooj was at the protests on the evening of May 29, 2020. These protests were highly charged and chaotic. The cited text messages do not demonstrate any advance planning. Most telling is the fact that at 10:08 p.m. that night, when Mr. Mattis asked Urooj what he should bring to the protest, she responded "[b]ring rocks, [a]nd water bottles those are good to throw too, [m]aybe some gasoline." Text Messages 5/29/2020 10:08-09 p.m. (emphasis added). The word "maybe" underscores the lack of planning. What happened on May 29, 2020 was aberrant conduct, not a concerted "mobilization" by Urooj.

3. The government also argues that the evidence found in Mr. Mattis' car shows that the arrests of Urooj and Mr. Mattis "disrupted a plan to cause even more extensive damage." Gov. Letter p. 7. But as noted in the Lebowitz report, Urooj experienced deep ambivalence about the idea of using the Molotov cocktails. It was only when Urooj and Mr. Mattis saw a car that was already heavily damaged, unoccupied, and away from crowds that they

ultimately acted. And, as Dr. Lebowitz explains, upon lighting the Molotov cocktail, Urooj felt instant regret. There was no plan to cause "more extensive damage" that evening.

4. We respectfully submit that the comparator cases offered by the government are, for many reasons, distinguishable from this case and should not inform the sentence here. Gov. Letter p. 9.

The government first cites United States v. Robinson, et al., No. 20-CR-181 (D. Minn.), where the defendants received custodial sentences of 48, 41, 36, and 27 months' imprisonment. In that case, the defendants "participated in the near total destruction of an active police precinct that caused $12 million in damages." Gov. Submission (Def. Robinson) at 12-13, ECF No. 158 (Mar. 26, 2021); see also Gov. Submission (Def. Wolfe) at 10, ECF No. 174 (Apr. 15, 2021); Gov. Submission (Def. Williams) at 10, ECF No. 143 (Mar. 9, 2021); Gov. Submission (Def. Turner) at 9, ECF No. 190 (May 3, 2021). Each defendant set or contributed to a fire inside or at the entrance of the precinct with multiple "people in their vicinity and an unknown number of people inside the building." Gov. Robinson Submission at 13; Gov. Wolfe Submission at 10; Gov. Williams Submission at 10; Gov. Turner Submission at 9. In addition, one defendant entered the precinct and stole the following items: a police vest, duty belt, handcuffs, earpiece, baton, knife, riot helmet, pistol magazine, police radio, police overdose kit, uniform name plates, and ammunition. Gov. Wolfe Submission at 3-4. Finally, three of the four defendants had troubling criminal histories that included aiding and abetting an armed robbery during which a gun discharged at a park occupied by children (Turner), multiple convictions including a previous

felony (Robinson), and two domestic violence convictions (Wolfe).[3] Gov. Turner Submission at 10; Gov. Robinson Submission at 8; Gov. Wolfe Submission at 11. Robinson is far afield from this case.

Next, the government cites United States v. David-Pitts, No. 20-cr-143 (W.D. Wa.). That case, like Robinson, involved a defendant who attacked a police precinct, but there the precinct was occupied by police officers. Specifically, David-Pitts engaged in the following conduct: (1) he attempted to breach the precinct's garage doors; (2) when officers opened a nearby door, he threw a glass wine bottle at the door, which caused the officers to retreat; (3) he and another person piled trash bags against the precinct garage door; and (4) David-Pitts then used a lighter to set the garbage bags on fire. Gov. Submission at 3-4, ECF No. 37 (May 17, 2021). While David-Pitts engaged in this conduct, other individuals with whom he was associated attempted to barricade a nearby door "in an effort to prevent the officers who were inside the precinct from exiting through the door." Id. at 4. They "smashed the exterior card reader to the door, fixed a metal rod against the door handle, and sprayed rapidly drying cement around the door." Id. at 4-5. David-Pitts also assisted others in breaking through a nearby fence to set another fire against the precinct building. Id. Surely, Urooj's sentence should be considerably less than David-Pitts' 20-month term.

[3] The fourth defendant, Williams, had one prior misdemeanor conviction. Gov. Williams Submission at 12.

BRACEWELL





Third, the government cites United States v. Jackson, No. 20-cr-148 (W.D. Wa.). In that case, the defendant arrived at the protests dressed "seemingly for a battle" in a dark sweatshirt, half-face respirator mask, ski goggles, and a backpack containing Molotov cocktails. Gov. Submission at 6, ECF No. 50 (Mar. 23, 2021). Jackson threw Molotov cocktails into two separate Seattle Police Department cars, the second coming about an hour after the first. Id. at 7. There were "hundreds of people who were standing in the vicinity of the police cars that Jackson attacked. Many . . . were just a few feet away from the vehicles and even closer to the fires Jackson caused on the sidewalks adjacent to the vehicles." Id. at 8. Jackson also had a "concerning" criminal history and was under supervision of the Washington Department of Corrections at the time of his offense; he had three pending cases involving burglary charges. Id. at 13. Comparing him to Urooj gets it wrong.

As we wrote in our opening submission, no two cases are exactly alike, and no two defendants are exactly alike. But if the Court seeks comparators, we respectfully submit that United States v. Carberry, et al., is the closest case in both the conduct and the characteristics of the defendants, and that the sentence of six months' imprisonment and six months' home confinement should be informative. The government's attempt to distinguish Carberry is wanting. The Carberry defendants targeted a functional NYPD vehicle and returned to restart the fire when it did not ignite. Moreover, the government's statement that Mr. Mattis' and Urooj's conduct

"happened in the midst of an active protest" is incorrect. Gov. Letter p. 9. When Mr. Mattis and Urooj acted, there were no protesters nearby.[4]

Nor are the sentences imposed on the Carberry defendants outliers. Other courts have considered the facts and circumstances of similar protest-related cases and imposed sentences below the government's recommendation here. See U.S. v. Fagundo, No. 21-cr-00195 (E.D. Ill.); ECF No. 16, Gov. Submission; ECF No. 20, Judgment (defendant sentenced to three years' probation for bringing fireworks and lighter fluid to a protest, shattering the windows of a Chicago Police Department vehicle, lighting a firework, and throwing it into the vehicle, causing the vehicle to become engulfed in flames); U.S. v. Guthrie, No 20-cr-541 (D.S.C.); ECF No. 31, Sentencing Tr. (defendant sentenced to time served, which appears to be one day, with one year supervised release, for participating in the arson of a Charleston police car); U.S. v. Dreschler, No. 21-cr-6064 (W.D.N.Y.); ECF No. 26, Plea Agreement; ECF No. 39, Judgment (defendant sentenced to imprisonment of a year and a day for burning two government vehicles, looting nearby stores, and damaging property throughout the city of Rochester). These cases are the relevant comparators here.

* * *

We thank the Court for considering these additional points.

[4] Significantly, Urooj acted in direct response to a devastating murder and chaotic protest environment that prompted a national reckoning. The Carberry defendants acted nearly two months later, when everyone presumably had time to cool down and reflect.

BRACEWELL






Respectfully submitted,

BRACEWELL LLP

/s/ Rita Maxwell

Rita Maxwell

FAEGRE DRINKER BIDDLE & REATH LLP

/s/ Peter Baldwin

Peter Baldwin